Silvers *et al. v.* Canary, Trustee.

No. 13,770.

SILVERS ET AL. *v.* CANARY, TRUSTEE.

TRUST.— *Will.— Vested Estate.*—A bequest to named persons jointly of "one-fifth part of my estate, after my just debts are paid, and not otherwise disposed of, to remain in the hands of my executor until they become of age," vested a present and equal interest in the legatees.

SAME.— *Guardian.—Execution of Trust.*—The trust created by the will could not be changed or defeated by paying the money, upon the death of the executor, to a guardian of the beneficiaries; but the mere fact that the person appointed by the court was called a guardian, rather than a trustee, could not defeat the trust, for if control of the fund was taken with knowledge of the trust, the guardian and his sureties were chargeable with its execution.

SAME.— *Decedent's Estate.— Settlement of Trust by Administrator.*—It is the duty of executors and administrators who come into possession of trust property, to settle the accounts of the decedent in relation to the trust. They must ·preserve the fund, but they are not bound to execute the ·trust, and may, with the approval of the court, pay the money to a duly appointed successor.

SAME.— *Conclusiveness of Settlement.— Liability of Heirs.— Guardianship.*— A settlement made by the administrator of a trustee with the guardian of the *cestuis que trust*, whereby the guardian's individual note was surrendered to him in satisfaction of the amount due his wards, which settlement was reported to and approved by the court having jurisdiction, is, while it stands unimpeached, a bar to a suit against the heirs of the trustee, under section 2442, R. S. 1881, by a subsequent guardian and trustee who, as surety in the bond of his predecessor, had suffered loss by the latter's default.

From the Sullivan Circuit Court.

*J. S. Bays* and *J. C. Chaney,* for appellants.

*J. C. Briggs, J. T. Hays, H. J. Hays* and *W. C. Hultz,* for appellee.

MITCHELL, C. J.—This action was brought by John W. Canary against the heirs of James L. Silvers, deceased, for the purpose of holding the defendants liable under section 2442, R. S. 1881, for the payment of a debt which the plaintiff

alleges remains due and owing to him as trustee from the decedent's estate.

The following facts found by the court present the questions for decision : By his last will and testament Samuel Silvers, who died in May, 1871, bequeathed to his granddaughters, Eva Romania and Ellen Louise Silvers, a residuary interest in his estate, which produced $506.02 in money. The will provided that the money should remain in the hands of James L. Silvers, who was named therein as executor, until the legatees should arrive at full age, and that, if only one of them survived to that age, the survivor to have the whole, to be paid over, with six per cent. per annum interest, when she arrived at age.

After receiving the trust money above provided, the executor, James L. Silvers, died in May, 1873, leaving the defendants, Abbie Silvers, his widow, and Rachel L. and James L. Silvers, his children and only heirs, each of whom has received about two thousand dollars in money and property from the decedent's estate. After the death of James L. Silvers his widow was duly qualified as administratrix of his estate, and Samuel H. Silvers was duly appointed and qualified as guardian of the persons and estates of Eva R. and Ellen Louise Silvers, the latter being still infants. Cyrus Johnson and the plaintiff in the present case became sureties for the guardian on his bond. On the 22d day of April, 1874, Abbie Silvers, as administratrix of the estate of her deceased husband, settled with the guardian of Eva R. and Ellen Louise, and in payment of the amount of the legacy which came into the hands of James L. Silvers under the will of Samuel Silvers, surrendered to the guardian a promissory note executed by him to James L. Silvers for $571, which the administratrix held as part of the assets of her late husband's estate. The guardian received the note due from him to the estate in full payment of the liability of the estate under the trust created by the will of Samuel Silvers, and executed a receipt in full for the amount due from the estate to

his wards. This receipt and settlement were reported to the court by the administratrix with her final account and settlement of her husband's estate, which account was approved and the administratrix duly discharged at the January term, 1875, of the Sullivan Circuit Court.

This report has never been modified or set aside. The guardian was insolvent at the time he accepted his note in settlement, but he charged himself with the amount of the fund as so much money received from the estate of James L. Silvers. He resigned his trust in June, 1883, his final report, which was duly approved by the court, showing that there was in his hands $886.88 belonging to his wards. The plaintiff, one of the sureties on the late guardian's bond, was thereupon duly appointed guardian of the wards above mentioned. After his appointment he received from the heirs of his co-surety $443.44, that sum being one-half of the supposed liability of the sureties on the former guardian's bond. The plaintiff charged himself as and for the amount of his supposed liability as co-surety with the other half.

On the 16th day of June, 1885, the plaintiff was appointed by the Sullivan Circuit Court trustee, as successor in the trust to James L. Silvers, deceased, there having been no other trustee appointed since the death of the latter, except the several guardians hereinbefore mentioned. Afterwards, on the 4th day of April, 1885, Eva R. having attained her majority, the plaintiff as her guardian paid her $445, in full of her share of the legacy under her grandfather's will. Ellen Louise has not yet arrived at age.

Canary commenced this suit as trustee in June, 1885, and prosecutes as such under an agreement with Eva R. that he is to retain out of the amount he may recover a sum equal to the amount paid by him as surety on his predecessor's bond, and to pay the residue to his wards.

The conclusions of law stated by the court, on the facts above summarized, were favorable to a recovery by the plaintiff of the whole amount which went into the hands of

James L. Silvers, together with interest, from the heirs of the latter. Judgment was rendered accordingly. The heirs appeal, and challenge the propriety of the conclusions and judgment of the court.

Section 2442 provides that heirs, devisees and distributees of decedents' estates shall be liable, to the extent of the property received by them from the decedent's estate, to any creditor, whose claim remains unpaid, who six months prior to the final settlement of the estate was insane, an infant, or out of the State.

The purpose and policy of this statute very clearly is, to afford a remedy against the heirs and distributees of an estate, in favor of those whose claims remain unpaid, and who, on account of insanity, infancy or non-residence, may be prevented from proving their demands prior to the final settlement of the estate.

The claims of infants, insane persons and non-residents may, like any other claims against a decedent's estate, be presented for adjustment, and may be adjusted and settled in the ordinary course of administration. If the claims of such persons are presented and adjusted, they stand upon the same footing afterwards as other adjusted claims. For example, it has been held that if a non-resident files his claim against an estate, and afterwards dismisses it, he will not be entitled to maintain an action against the heirs of the decedent under section 2442. *Busenbark* v. *Healey*, 93 Ind. 450; *Yoast* v. *Willis*, 9 Ind. 548; *Voris* v. *State, ex rel.*, 47 Ind. 345. The reason is, that, by filing his claim, the court acquired jurisdiction of his person, and of the subject-matter, and hence the creditor had the opportunity of establishing his demand in the usual course of administration, without proceeding against the heir, who, according to the common law, was not liable on the simple contract of his ancestor. The plaintiff's predecessor, as guardian, settled the claim which is the foundation of the present action with the administratrix of James L. Silvers' estate. He gave a receipt

Silvers *et al. v.* Canary, Trustee.

in full against the very claim now sued on, and this receipt was reported to the court with the final account of the administratrix, who was finally discharged after her report had been approved.

' It is argued in support of the judgment below that, inasmuch as the will of Samuel Silvers directed the executor to pay the legacies to the beneficiaries as they respectively arrived at full age, and because it provided further that, in case of the death of either before arriving at age, the whole should be paid to the survivor, the legatees took no vested interest in the fund until they respectively arrived, or shall arrive, at their majority; hence it is said the trust could not be changed by paying the fund to a guardian, who might have expended the entire amount for the support of his wards before they attained their majority, thereby practically defeating the testator's purpose.

The conclusion drawn from the premise above stated is, that the payment to the guardian was void and ineffectual to discharge the estate of James L. Silvers from the obligation created by the trust. *Giles* v. *Franks,* 2 Devereux Eq. 521, is relied on mainly to support the conclusion above stated.

The clause in the will which gave rise to the controversy in that case was as follows : " I give to Edward S. Giles one horse, saddle and bridle, worth eighty dollars, when he shall arrive at the age of twenty-one." The court held that the right to the legacy was dependent upon the arrival of the legatee at the prescribed age ; that until that event the legacy was contingent, and that the delivery of the property to an insolvent guardian before the legatee arrived at his majority did not discharge the liability of the trustee. The reasoning in the case is conclusive as applied to the will there under consideration. By the very terms of the will the legatee was given the property " when he shall arrive at the age of twenty-one." As the court there said, in effect, until the legatee arrived at the prescribed age, the property belonged to the testator's estate, and in case the prospective

beneficiary had died before attaining his majority, the legacy would have lapsed.

The material part of the bequest involved in the present case is as follows:

" To * * Eva Romania Silvers and Ellen Louise Silvers, jointly, I bequeath one-fifth part of my estate, after my just debts are paid, and not otherwise disposed of, to remain in the hands of my executor until they become of age," etc.

This provision vested in the legatees a present and equal interest in the entire legacy, subject to the right of the survivor to take the whole in case of the death of either before arriving at the prescribed age. If both had died before receiving payment the legacy would not have lapsed; it would have descended to the heirs of the survivor according to the statute regulating descents. Roper Legacies, 600.

The distinction between a bequest to a legatee " when " or " if " a certain event happens, and an unrestricted present bequest, payable at a time fixed, is not to be disregarded. In the one case the vesting is deferred until the event happens, while in the other the legacy vests presently upon the death of the testator, although its enjoyment may be postponed. 2 Redfield Wills, 234.

It is true, as a matter of course, that the trust created by the will under consideration could not be changed or defeated by paying the money to a guardian. But the fact that the person appointed by the court was called a guardian, rather than a trustee, could not defeat the trust.

Property charged with a trust will be followed in equity into whosesoever hands it comes, and he will be charged with the execution of the trust unless he be a purchaser for value and without notice. 1 Perry Trusts, section 38.

So far as appears, the guardian with whom the administratrix of the estate of James L. Silvers made settlement of the matter pertaining to the trust may have been appointed by the court for the very purpose of executing the trust created by the will. It is quite certain that, having assumed to

take the fund belonging to his wards, with knowledge of the trust, the guardian and the sureties on his bond were chargeable with the due execution of the trust according to the terms of the will.

It is the duty of executors and administrators who come into possession of trust property to settle the accounts of the decedent in relation to the trust. They must see to it that the trust fund is preserved, but they are not bound to execute the trust, and they may pay the fund over, with the approval of the court, to a duly appointed successor. Upon the facts as they are found in the present case, our conclusion is that the guardian was a duly appointed successor, authorized to receive the fund and execute the trust.

Having arrived at the conclusion that the administratrix was justified in making a settlement of the trust account with the guardian of the *cestuis que trust,* it must follow that so long as the settlement, actually made and finally approved by the court, stands unimpeached, it constitutes a bar to a suit against the heirs of James L. Silvers. It can not be attacked in this collateral way. *Holland* v. *State, ex rel.,* 48 Ind. 391; *Sanders* v. *Loy,* 61 Ind. 298.

The report of the administratrix of the decedent's estate, with the receipt of the guardian in full settlement of the matter of the trust, gave the court jurisdiction of the subject-matter, and its judgment that the trust had been duly settled is conclusive upon the guardian, and those represented by him, until it is set aside. *Castetter* v. *State, ex rel.,* 112 Ind. 445, and cases cited.

While it is quite true that the acceptance by the guardian of his own note in payment of the trust fund might of itself have been sufficient ground to warrant the court in setting aside its order of final settlement, in case the legatees or some one duly authorized on their behalf had made application to that end, no such application has ever been made.

It is a significant fact, too, that not one dollar of the trust fund has been lost to the beneficiaries, nor have they, or

either of them, any cause for complaint. One of the legatees has arrived at full age, and, affirming all that has been done meanwhile, she has received from the hands of the plaintiff, as successor in the guardianship, her full share of the legacy. Surely, with this money in her hands as the fruits of the settlement made by her guardian with the estate of James L. Silvers, she could not now maintain a suit against the latter's heirs. What she could not do, another can not do in her behalf.

It is true the guardian was insolvent when he accepted his note in settlement, and the sureties on his bond have made the amount good. The legatees have received the benefit of it none the less. The money received was the result of the settlement made by the administratrix of the estate of James L. Silvers with the plaintiff's predecessor as guardian. The administratrix surrendered a note belonging to the estate, and thus paid what was accepted as, and what may have been supposed at the time to be, a full and adequate consideration for the settlement. The estate is under no obligation to reimburse the sureties on the guardian's bond. The duty of the administratrix was to settle the trust to the approval of the court, with some one duly authorized to receive the fund. This has been done. Whatever injury the plaintiff may have sustained as surety on the bond of the defaulting guardian, who charged himself with the amount of the fund, as money received from the estate of James L. Silvers, he can not now repair, as seems to be his purpose, by pursuing the appellants as heirs while the settlement made by the administratrix stands.

The court erred in the conclusions of law stated upon the facts found.

The judgment is reversed, with costs, with directions to the court below to restate its conclusions of law in consonance with this opinion, and to render judgment accordingly.

Filed March 22, 1888.